# STATE OF CONNECTICUT *v.* ROGER A. JONES
## (AC 24224)

Foti, Flynn and DiPentima, Js.

Argued January 8—officially released March 16, 2004

*Neal Cone*, senior assistant public defender, for the appellant (defendant).

*Rita M. Shair*, senior assistant state's attorney, with whom were *James E. Thomas*, state's attorney, and, on the brief, *Herbert J. Carlson, Jr.*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Roger A. Jones, appeals from the judgment of conviction, rendered after a jury trial, of one count of murder in violation of General Statutes § 53a-54a, one count of manslaughter in the first degree in violation of General Statutes § 53a-55, two counts of felony murder in violation of General Statutes § 53a-54c, one count of burglary in the first degree in violation of General Statutes § 53a-101, one count of conspiracy to commit burglary in the first degree in violation of General Statutes §§ 53a-48 and 53a-101, one count of larceny in the first degree in violation of General Statutes § 53a-122, and one count of conspiracy to commit larceny in the first degree in violation of General Statutes §§ 53a-48 and 53a-122.[1] On appeal, the defendant claims that the court's reasonable doubt instructions to the jury deprived him of his rights to due process under both the state and federal constitutions. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the evening hours of November 1, 1996, the defendant and an accomplice, Vaughn Walker, arrived at the West Hartford home of John Haugh and Patricia Haugh. Walker severed the telephone lines to the home, and the defendant and Walker gained entry by means of a garage window. John Haugh, who was in his living room at the time of the intrusion, resisted

---

[1] The court imposed a total effective sentence of 108 years imprisonment with a 50 year mandatory minimum sentence.

the defendant and Walker. The defendant struck John Haugh in the stomach and Walker struck Haugh in the head with a small baseball bat that he had brought with him. After subduing Haugh, Walker and the defendant bound Haugh's legs with duct tape that they had brought with them. John Haugh died as a result of the head injury inflicted by Walker. The defendant and Walker thereafter went upstairs, where they found Patricia Haugh asleep in her bed. Walker forcibly held a pillow over Patricia Haugh's head, smothering her to death, while the defendant stood nearby. Walker killed the victims in furtherance of a criminal scheme between himself and the defendant. The object of this scheme was to burglarize the home and to steal John Haugh's automobile. The defendant and Walker removed several items from the home, including credit cards, personal checks and a compact disc player. They left in John Haugh's automobile.

In its charge, the court instructed the jury that the state bore the burden of proving beyond a reasonable doubt each and every element of each offense charged. The court then instructed the jury with regard to reasonable doubt.[2] The defendant claims that the court's

[2] The court's instructions were as follows: "Now we come to reasonable doubt, an obviously key concept in our criminal law. I gave you some preview on this just before we started the evidence, as I recall, and, unfortunately, it's not simple. It's very important.

"The law presumes [the defendant] to be innocent of the crimes charged. This [defendant], although accused, begins the trial with a 'clean slate.' That is, with no evidence against him. The law permits nothing but legal evidence presented to you to be considered in support of any charge against him. The presumption of innocence alone is sufficient to acquit [the defendant] unless you are satisfied beyond a reasonable doubt of his guilt, after careful and impartial consideration of all the evidence in this case.

"It is not required that the state prove guilt beyond all possible doubt. The test is one of reasonable doubt. A reasonable doubt is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable [person] hesitate to act. Proof beyond a reasonable doubt must therefore be proof of such a convincing character that a reasonable person would not hesitate to rely—a reasonable person would not hesitate to act upon it in the most important affairs in his or her own life. If you had a

instruction deprived him of the due process rights

reasonable doubt, it would be such a doubt of such a convincing character that a reasonable person would hesitate in the most important affairs of his or her life to act upon it.

"You remember that [the defendant] is never to be convicted on mere suspicion or conjecture. The burden is always upon the state to prove guilt beyond a reasonable doubt. This burden never shifts to the defendant. The law never imposes on the defendant in a criminal case the duty of calling any witnesses or producing any evidence. If you, the jury, after careful and impartial consideration of all the evidence in the case have a reasonable doubt that [the defendant] is not guilty of any of the charges, you must acquit him of that charge or of those charges. The exception we will get into on the affirmative defense, whether there is a burden of proof on the defendant.

"Reasonable doubt. The meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, a guess or a mere conjecture, nor is it a doubt not warranted by the evidence. It is such a doubt that in the serious affairs that concern you, you would heed. That is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance. It is not a hesitation springing from any feelings of sympathy or pity for the accused or any other persons who might be affected by your decision. It is, in other words, a reasonable doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence. It is a doubt that is honestly entertained and is reasonable in light of the evidence after a fair and careful examination of the entire evidence.

"Proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. The law requires that after hearing all of the evidence, if there is something in the evidence or lack of evidence that leaves in the minds of jurors as reasonable men and women a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted.

"Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion. Again, the meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, guess or mere conjecture. It is not a doubt that is not warranted by the evidence or lack of evidence. It is a doubt that in the serious affairs of your life you would heed. That is, such a doubt as would cause you to hesitate to act in matters of importance. It would not be a hesitation springing from any feelings of pity or sympathy. It is, in other words, a real doubt, an honest doubt, a doubt which has its foundation in the evidence or lack of evidence. It's a doubt that is honestly entertained and is reasonable in the light of the evidence after a fair and careful examination and comparison of the entire evidence. It does not mean proof beyond all doubt. The law does not require absolute certainty before a jury returns with a verdict of guilty. The law requires that after

afforded him under article first, § 8, of the constitution of Connecticut and the fourteenth amendment to the constitution of the United States. The defendant claims that the instruction created a "reasonable likelihood" and a "reasonable possibility" that the jury believed that "a doubt, to be reasonable, was greater than that needed to acquit under the state and federal constitutions."

The defendant challenges several aspects of the reasonable doubt instructions but did not preserve many aspects of his claim. He now seeks review under the four part test set forth in *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The claim is reviewable because the record is adequate and because a claim of instructional error related to the burden of proof is of constitutional magnitude. See, e.g., *State* v. *Morant,* 242 Conn. 666, 686–87, 701 A.2d 1 (1997). The claim, however, fails on its merits under *Golding*'s third prong because the defendant has not demonstrated that a constitutional violation clearly exists and clearly deprived him of a fair trial.

"It is fundamental that proof of guilt in a criminal case must be beyond a reasonable doubt. . . . The [reasonable doubt concept] provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law. . . . At the same time, by impressing upon the [fact finder] the need to reach a subjective state of near certitude of the guilt of the accused, the [reasonable doubt] standard symbolizes the significance that our

hearing all the evidence, if there's something in the evidence or lack of evidence that leaves in the minds of the jurors as reasonable men and women a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt. Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion."

society attaches to the criminal sanction and thus to liberty itself. . . . [Consequently] [t]he defendants in a criminal case are entitled to a clear and unequivocal charge by the court that the guilt of the defendants must be proved beyond a reasonable doubt. . . .

"In determining whether a trial court's charge satisfies constitutional requirements, however, individual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Citations omitted; internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 105–106, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).[3]

---

[3] The defendant claims that the due process clause of the constitution of Connecticut affords him greater protection than its federal counterpart and, thus, even if the court's instruction survives scrutiny under the federal constitution, it would not survive scrutiny under our state constitution. The defendant claims that the inquiry under the state constitution asks whether there was "a reasonable possibility" that one or more jurors could have misunderstood the court's instructions so as to convict him with less than the proper burden of proof. The defendant further claims that the inquiry under the federal constitution asks only whether an improper instruction created a "reasonable likelihood" that the jury applied an improper instruction in reaching its verdict.

We reject the defendant's claim that any difference in protection exists. In *State* v. *Otero*, 49 Conn. App. 459, 470–74, 715 A.2d 782, cert. denied, 247 Conn. 910, 719 A.2d 905 (1998), the defendant sought review of the trial court's instruction concerning reasonable doubt, claiming that the instruction deprived him of his right to due process under both the state and federal constitutions. In addressing the claim, this court stated: "[O]ur Supreme

First, the defendant challenges the following sentence from the instruction: "It is not required that the state prove guilt beyond all possible doubt." The defendant argues that this language unduly favored the prosecution. In *State* v. *Morant*, supra, 242 Conn. 687–88, our Supreme Court upheld a nearly identical statement in an instruction on reasonable doubt. The Supreme Court stated that it had before it no valid reason to depart from its previous decisions approving such an instruction under either the state or federal constitutions; id., 688; and we are bound by that decision.

Second, the defendant challenges the following sentence from the instruction, which the court repeated twice: "The law does not require absolute certainty on the part of the jury before it returns a verdict of guilty." The defendant argues that this part of the instruction favored the state. This statement is not an improper component of an instruction on reasonable doubt because it accurately states the law, and our Supreme Court has upheld nearly verbatim instructions. See

Court has repeatedly held that, as a general rule, the due process clauses of both the United States and Connecticut constitutions have the same meanings and impose similar limitations. . . . Furthermore, this court has noted that in an independent analysis of a state constitutional provision, departure from federal constitutional precedent is usually justified only where the United States Supreme Court has created exception to or deviated from rules previously enunciated by it . . . . When we find that our citizens have relied on an understanding of their constitutional rights that is more expansive than that afforded under a recent interpretation of the federal constitution by the United States Supreme Court, we will be inclined to interpret our state constitution as affording greater protection to preserve those rights. . . . Otherwise, we will continue to follow the persuasive analysis of the United States Supreme Court." (Citations omitted; internal quotation marks omitted.) Id., 470–71 n.12.

The defendant has not persuaded us that such circumstances exist or that we should deviate from our adherence to the well settled standard of review that both this court and our Supreme Court have applied to numerous claims, brought under both our state and federal constitutions, of improper instruction on the principle of reasonable doubt. See, e.g., *State* v. *Velasco*, 253 Conn. 210, 247, 751 A.2d 800 (2000); *State* v. *Griffin*, 253 Conn. 195, 206, 749 A.2d 1192 (2000). That is the standard of review that we shall employ.

*State* v. *Lemoine*, 256 Conn. 193, 202, 770 A.2d 491 (2001); *State* v. *Ryerson*, 201 Conn. 333, 343 n.2, 514 A.2d 337 (1986).

Third, the defendant claims that the court improperly omitted an instruction that he sought in his request to charge, namely, that "[i]f you are not convinced in your mind to a mental state of near certitude of [the defendant's] guilt, then the state has not convinced you beyond a reasonable doubt." The defendant recognizes that our Supreme Court, in *State* v. *Ryerson*, supra, 201 Conn. 342, ruled that due process does not require the court to use such language concerning the jury's "near certitude" in reaching a verdict. The defendant, however, argues that the charge was improper because it did not include either this language or language concerning the jury's need to possess an "abiding conviction" of the defendant's guilt prior to delivering a guilty verdict. Having reviewed the charge in its entirety, we conclude that it adequately conveyed the requisite degree of certitude required by the jury in order to reach a guilty verdict.[4]

Fourth, the defendant claims that the court diluted the state's burden of proof in the following instruction: "If you had a reasonable doubt, it would be such a doubt of such a convincing character that a reasonable person would hesitate in the most important affairs of his or her life to act upon it."[5] The defendant claims that the word "convincing" implied that a reasonable doubt needed to be a doubt held with a high level of confidence, a doubt that "is the very biggest type of

---

[4] The court stated twice in its instruction: "Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion."

[5] In his request to charge, the defendant sought the following instruction: "Proof beyond a reasonable doubt must . . . be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it in the most important of his own affairs."

doubt one can possess." This strained interpretation of the word "convincing" runs contrary to the court's overall charge. Further, our Supreme Court has upheld nearly identical language. See, e.g., *State* v. *Velasco*, 253 Conn. 210, 248–49, 751 A.2d 800 (2000); *State* v. *Morant*, supra, 242 Conn. 688; see also *State* v. *Nunes*, 58 Conn. App. 296, 308, 752 A.2d 93, cert. denied, 254 Conn. 944, 762 A.2d 906 (2000); *State* v. *Steed*, 54 Conn. App. 543, 549–50, 736 A.2d 918 (1999).

Fifth, the defendant challenges the following instruction: "Reasonable doubt. The meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, a guess or a mere conjecture, nor is it a doubt not warranted by the evidence." The defendant claims that this part of the instruction diluted the state's burden of proof because it implied that the jury was free to dismiss a doubt suggested by the evidence or lack of evidence in the case if such doubt was a surmise, a guess or a mere conjecture. We reject this unreasonable interpretation of the instruction. The court appropriately conveyed to the jury, several times in its charge, that the jury was to examine carefully the evidence and to acquit the defendant of the crimes with which he stood charged if a reasonable doubt existed as to his guilt. The court adequately addressed the relationship between the sufficiency of the evidence and the concept of reasonable doubt.

Sixth, the defendant challenges the court's charge because it twice contained an instruction that reasonable doubt was not a doubt "not warranted by the evidence." The defendant posits that this instruction was ambiguous because the word "warrant" is susceptible of more than one meaning. We conclude that it is not reasonably possible that the word "warrant," in the customary context in which the court used it, misled the jury. See, e.g., *State* v. *Betances*, 265 Conn. 493, 510–11, 828 A.2d 1248 (2003).

Seventh, the defendant challenges the court's instructions that reasonable doubt is "not a surmise, a guess or a mere conjecture." He argues that such instruction may have caused the jury "not merely to exclude aberrant mental processes, but to put aside real doubts unless those doubts have in their minds a certain degree of strength . . . ." The defendant's strained interpretation of this aspect of the court's instruction is not persuasive. Further, our Supreme Court has upheld nearly identical instructions. See, e.g., *State* v. *Rizzo*, 266 Conn. 171, 221 n.30, 833 A.2d 363 (2003); *State* v. *Griffin*, 253 Conn. 195, 206, 749 A.2d 1192 (2000).

Eighth, the defendant challenges that part of the court's instruction that reasonable doubt "is not a hesitation springing from any feelings of sympathy or pity for the accused or any other persons who might be affected by your decision." The court later reiterated that reasonable doubt "would not be a hesitation springing from any feelings of pity or sympathy." The defendant claims that these instructions were "pro state" because the court advised the jury not to have sympathy for him but did not specifically advise the jury not to have sympathy for "the victims and their family." The court's instruction in no way encouraged the jury to let feelings of sympathy for any person or persons affect its verdict; the court advised the jury not to be affected by "feelings of sympathy or pity for the accused *or any other persons who might be affected by your decision.*" (Emphasis added.) The defendant's interpretation of this instruction belies the plain language of the court's explicit admonition and wholly lacks merit.

Ninth, the defendant challenges the court's instructions that reasonable doubt was "a real doubt, an honest doubt . . . ." There exists overwhelming precedent adverse to this claim. See, e.g., *State* v. *Reynolds*, supra, 264 Conn. 106; *State* v. *Velasco*, supra, 253 Conn. 249,

*State* v. *Whipper*, 258 Conn. 229, 293–98, 780 A.2d 53 (2001).

Tenth, the defendant challenges the instruction that if the jury finds a reasonable doubt as to guilt, "the accused must be given the benefit of that doubt . . . ." The defendant posits that the instruction "could readily be taken to equate when an accused person should be acquitted with giving someone 'the benefit of [the] doubt' and that this would yet again suggest that reasonable doubt territory is entered in the vicinity of 'when the guilt or innocence is evenly balanced.' " We see no practical difference between this claim and the claim that we rejected in *State* v. *Vicente*, 62 Conn. App. 625, 631–32, 772 A.2d 643 (2001).

Finally, the defendant challenges the following instruction, which the court delivered prior to delivering its specific instructions concerning reasonable doubt: "The state's burden of proof beyond a reasonable doubt applies to each and every element of the crime charged, but this burden does not operate on any subordinate evidentiary or incidental facts, as distinguished from proof of the elements of the crime or an ultimate fact.

"Where, however, the state relies in whole or in part on circumstantial evidence to prove an element of the crime, although each link in the chain of evidence to support it need not be proven beyond a reasonable doubt, the cumulative impact of the evidence must, in order to support that inference, prove to you beyond a reasonable doubt that the element of the crime has been proved."[6]

The court correctly stated the law with regard to the state's burden of proof. See, e.g., *State* v. *Dorans*, 261 Conn. 730, 747–48 n.21, 806 A.2d 1033 (2002); *State* v.

---

[6] The defendant sought that instruction in his request to charge.

*Green*, 62 Conn. App. 217, 222, 774 A.2d 157 (2001), aff'd, 261 Conn. 653, 804 A.2d 810 (2002). We find no merit to the defendant's claim that the court's statement of the law in this regard was "probably confusing." This court has held that instructions of this type are proper. See, e.g., *State* v. *Lee*, 53 Conn. App. 690, 699–700, 734 A.2d 136 (1999).

Having reviewed the court's instructions concerning reasonable doubt as a whole, we conclude that they could not reasonably have misled the jury. We review jury instructions to determine their effect on the jury in guiding it to a proper verdict. In contrast, the defendant has dissected the court's charge in a microscopic search for possible error. In so doing, he has interpreted individual words and phrases in artificial isolation, urging us to afford them interpretations that run contrary to their obvious meaning in the context of the court's charge. Further, the defendant has devoted a significant part of his claim challenging customary instructions[7] that the appellate courts of this state have consistently upheld as being proper. The defendant was not deprived of his constitutional right to a fair trial. Consequently, the defendant's claim fails under *Golding*'s third prong.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] See J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) § 2.8, p. 38 (model jury instruction on reasonable doubt).