## STATE OF CONNECTICUT *v.* SUSAN BIVRELL
### (AC 29860)

Flynn, C. J., and Alvord and Hennessy, Js.

Argued June 2—officially released August 18, 2009

*Kirstin B. Coffin,* special public defender, for the appellant (defendant).

*Sarah Hanna,* deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Linda F. Currie-Zeffiro,* deputy assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Susan Bivrell, appeals from the judgment of conviction, rendered after a jury trial, of assault of an elderly person in the third degree in violation of General Statutes § 53a-61a (a) (1) and breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (2). On appeal, the defendant claims that (1) the evidence was insufficient to support her conviction on either of the charges, (2) the court improperly diluted the state's burden of proof by repeatedly telling the jury not to be swayed by sympathy and (3) the court improperly denied the state's request to charge on the lesser included offense of assault in the third degree in violation of General Statutes § 53a-61. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. As of July 22, 2007, the defendant had been living at the Fairfield home of the victim, Edward Graves, a disabled veteran, who was seventy-one years old at the time of trial, for approximately six months because she was homeless. From time to time, the victim would provide transportation to the defendant on Sundays so that she could attend her regularly scheduled visitation with her children. On July 22, 2007, the defendant

wanted the victim to give her a ride, but the victim refused because he had other things to do. As the victim was sitting on his front porch steps, talking with his boarder, Glenn Smith, the defendant paced back and forth on the porch. The defendant was in an agitated state, and the victim was alarmed because he saw this as a "volatile situation." The defendant, while wearing a ring on her finger, then struck the victim several times, first on the left ear, causing it to bleed, and then several times on the forehead, also causing it to bleed. Smith told the victim that the ring "looked like a weapon." The victim also injured his shin when it scraped against the porch as he tried to get up from the step. The victim attempted to grab the defendant by her ankles, eventually causing her to fall, but he did not strike her. The victim, frightened, agitated and alarmed, then telephoned the police. When Officer John Tyler arrived on the scene, the victim still was bleeding. The victim continues to suffer from a ringing in his ear, confusion, disorientation and some hearing loss.

The defendant was arrested at the scene, and she was charged with assault of an elderly person in the third degree and breach of the peace in the second degree. After a jury trial, she was convicted on both counts. The court sentenced the defendant to a total effective term of eighteen months imprisonment, execution suspended after twelve months, with one year of probation. This appeal followed.

I

The defendant claims that there was insufficient evidence to sustain her conviction of assault of an elderly person in the third degree and of breach of the peace in the second degree. She argues that the only evidence of the victim's age was his testimony, that the victim submitted no medical bills and that the victim did not attempt to get away from the defendant during the

alleged attack. We conclude that the evidence was sufficient to support the conviction on each count.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v.

*Davis*, 283 Conn. 280, 329–30, 929 A.2d 278 (2007). Furthermore, "we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Morgan*, 274 Conn. 790, 800, 877 A.2d 739 (2005).

## A

For the defendant properly to be convicted of the crime of assault of an elderly person in the third degree, the jury had to find that she "commit[ed] assault in the third degree under section 53a-61 and . . . the victim of such assault ha[d] attained at least sixty years of age . . . . General Statutes § 53a-61a. The cross-referenced statute, General Statutes § 53a-61, provides in relevant part that a person is guilty of assault in the third degree when [w]ith intent to cause physical injury to another person, he causes such injury to such person. . . . General Statutes § 53a-61 (a). General Statutes § 53a-3 (11) provides that [a] person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . . General Statutes § 53a-3 (3) defines physical injury as impairment of physical condition or pain . . . ." (Internal quotation marks omitted.) *State* v. *Towns*, 114 Conn. App. 155, 160, 968 A.2d 975, cert. denied, 293 Conn. 901, 975 A.2d 1278 (2009).

The evidence in this case was overwhelming. The victim testified that he was born on March 25, 1936, making him seventy-one years old on the date of the attack. Although the defendant argues that this evidence, standing alone and uncorroborated, was insufficient, the jury is the finder of fact and is free to credit or discredit any part of a witness' testimony. *State* v. *Michael H.*, 291 Conn. 754, 761 n.7, 970 A.2d 113 (2009)

("the matter of . . . witness credibility [is] exclusively within the purview of the jury"). In this case, on the basis of the jury's finding of guilt, clearly it credited the victim's testimony as to his date of birth. Arguments regarding the victim's credibility generally are not properly the subject of an appeal. See *State* v. *Antonio W.*, 109 Conn. App. 43, 53, 950 A.2d 580, cert. denied, 289 Conn. 923, 958 A.2d 153 (2008).

In this case, the evidence also showed that the defendant repeatedly struck the victim because he would not provide her transportation. The victim bled from his ear, his forehead and his shin. As a result of his injuries, he suffered from a ringing in his ear, confusion, disorientation and some hearing loss, and he continued to suffer from those aliments at the time of trial. Certainly, the jury could have inferred from the victim's testimony that he was in pain as a result of the defendant's beating. Furthermore, the jury also reasonably could have inferred that the defendant intended to injure the victim by inflicting this beating. Members of the jury are permitted to rely on their life experience; common sense and experience in the matters of everyday life are not left at the courthouse door. See *State* v. *Mish*, 110 Conn. App. 245, 263, 954 A.2d 854, cert. denied, 289 Conn. 941, 959 A.2d 1008 (2008); *State* v. *Ramirez*, 94 Conn. App. 812, 822, 894 A.2d 1032, cert. denied, 278 Conn. 915, 899 A.2d 621 (2006). On the basis of the foregoing, we conclude that the evidence was sufficient to prove beyond a reasonable doubt that the defendant was guilty of assault of an elderly person in the third degree.

B

For the defendant properly to be convicted of the crime of breach of the peace in the second degree pursuant to § 53a-181 (a) (2), the jury had to find, beyond a reasonable doubt, that the defendant assaulted or struck the victim and that she had the "intent to cause inconvenience, annoyance or alarm, or

recklessly creat[ed] a risk thereof . . . ." The defendant does not analyze the elements of this crime or explain which element or elements she believes lacked sufficient proof, nor does her appellate brief contain any analysis whatsoever on this claim of insufficiency. Nevertheless, our review of the record reveals more than sufficient evidence to support the conviction.

As stated previously, the evidence was overwhelming to support the defendant's assault conviction. We further conclude that the jury reasonably could have inferred that by assaulting the victim, the defendant further intended to "cause inconvenience, annoyance or alarm, or recklessly creat[ed] a risk thereof . . . ." General Statutes § 53a-181 (a). Furthermore, both the victim and Smith testified that the victim, in fact, was alarmed by the incident.

II

The defendant next claims that the court improperly diluted the state's burden of proof by its instructions to the jury that it should not be swayed by sympathy. Specifically, she argues that "[t]he trial court's jury instruction that reasonable doubt 'is not hesitation springing from feelings of sympathy or pity for the accused or members of her family,' in addition to its other antisympathy instructions, reasonably misled the jury and unconstitutionally diluted the state's burden of proof." Because this issue was not preserved at trial, the defendant requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[1] or the

---

[1] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

plain error doctrine.[2] See Practice Book § 60-5. The state argues that the defendant waived her claim by failing to object to the instruction, that the claim merely was evidentiary in nature and not of constitutional magnitude and that the instruction, even if reviewable, was correct in law and not improper. We find no merit to the defendant's claim.

At the outset, we note that "[i]t is well established that [t]his court is not bound to review claims of error in jury instructions if the party raising the claim neither submitted a written request to charge nor excepted to the charge given by the trial court." (Internal quotation marks omitted.) *State* v. *Romero*, 269 Conn. 481, 487, 849 A.2d 760 (2004). Nonetheless, we consider a defendant's unpreserved claim of a constitutional violation under the standard set forth in *State* v. *Golding*, supra, 213 Conn. 239–40. "In harmony with the objective of *Golding*, [a] defendant's claim may be disposed of by focusing on whichever condition is most relevant in the particular circumstances. . . . A defendant may prevail under the third prong of *Golding* on a claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled." (Citation omitted; internal quotation marks omitted.) *State* v. *Jaynes*, 35 Conn. App. 541, 557, 645 A.2d 1060, cert. denied, 231 Conn. 928, 648 A.2d 880 (1994).

[2] The plain error doctrine, "codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy." (Internal quotation marks omitted.) *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009).

"Reasonable doubt is a concept easily comprehended but difficult to define. That this is so is manifested by the numerous appeals engendered over the years by the definitions, clarifications and amplifications of the phrase, which various courts have attempted. Each apparently slight deviation from language that previously has been approved seems to spawn a new appeal. In the light of our established standard of review, however, the claim that a phrase taken in isolation dilutes the state's burden of proof or casts some burden of proof on the defendant usually must fail. Our Supreme Court has pointed out frequently that when a jury instruction is challenged, the charge is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case." (Internal quotation marks omitted.) *State* v. *Mussington*, 87 Conn. App. 86, 90–91, 864 A.2d 75, cert. denied, 273 Conn. 914, 870 A.2d 1084 (2005).

In its reasonable doubt charge, the court instructed: "What does that mean, beyond a reasonable doubt? Now, the phrase 'reasonable doubt' has no technical or unusual meaning. You could arrive at the real meaning of it by emphasizing the word 'reasonable.' A reasonable doubt means a doubt based upon reason and common sense. It is a doubt which is something more than a guess or a surmise. It is not a conjecture or a fanciful doubt or a doubt raised by one who questions simply for the sake of argument. *It is not hesitation springing from feelings of sympathy or pity for the accused or members of her family or any other persons who might*

*in any way be affected by your verdict.* A reasonable doubt, in other words, is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or in the lack of evidence. It is one for which you can, in your own mind, conscientiously give a reason. Reasonable doubt is the kind of doubt upon which reasonable persons like yourselves, in the more serious and important affairs in your own lives, would hesitate to act upon.

"Now, of course, absolute certainty in the affairs of life is almost never attainable, and the law does not require absolute certainty on the part of the jury before you return a verdict of guilty. The state does not have to prove guilt beyond all doubt or to a mathematical or absolute certainty. What the law does require, however, is that after hearing all the evidence, if there is something in that evidence or lack of evidence which leaves in the minds of the jury, as reasonable men and women, a reasonable doubt about the guilt of the accused, then the accused must be given the benefit of that doubt and be acquitted.

"Proof beyond a reasonable doubt is proof which precludes every reasonable hypothesis except guilt, is consistent with guilt, and is inconsistent with any other reasonable conclusion. You must, however, distinguish between a reasonable hypothesis and a possible hypothesis. A mere possible hypothesis of innocence will not suffice. However, if you can, in reason, reconcile all of the facts proved with any reasonable theory consistent with the innocence of the accused, then you cannot find her guilty. On the other hand, if you find that the proven facts do establish the guilt of the accused beyond a reasonable doubt, then the proper verdict would be guilty." (Emphasis added.)

The defendant characterizes her claim as involving her constitutional right to have her guilt proven beyond a reasonable doubt. Specifically, she argues that "the

court's placing of an antisympathy instruction, clearly directed at the accused, directly in the reasonable doubt instruction, diluted the state's clear burden to prove the defendant guilty beyond a reasonable doubt and reasonably caused the jury to be misled. . . . The defendant is unaware of any courts which have endorsed the reasonable doubt instruction given in this case." (Citations omitted.)

In *State* v. *Jones*, 82 Conn. App. 81, 841 A.2d 1224, cert. denied, 269 Conn. 912, 852 A.2d 741 (2004), the defendant challenged "that part of the court's instruction that reasonable doubt *'is not a hesitation springing from any feelings of sympathy or pity for the accused or any other persons who might be affected by your decision'* [and the court's] later reiterat[ion] that reasonable doubt 'would not be a hesitation springing from any feelings of pity or sympathy.' " (Emphasis added.) Id., 90. The defendant in *Jones* had claimed that the sympathy instructions contained in the court's instructions on reasonable doubt were " 'pro state' . . . ." Id. Reviewing the instructions as a whole, as we must, we concluded that the claim lacked merit because the "instruction in no way encouraged the jury to let feelings of sympathy for any person or persons affect its verdict; the court advised the jury not to be affected by 'feelings of sympathy or pity for the accused or any other persons who might be affected by your decision.' " Id.

In comparing the instruction at issue in the present case with the instruction at issue in *Jones*, we discern no meaningful difference between the two. Accordingly, this court, already having found such instruction to be proper, we reject the defendant's claim.[3]

---

[3] As to the defendant's argument that outside of the reasonable doubt instruction, the court also instructed the jury not to be influenced by sympathy two more times, we agree with the state that this alleged impropriety is not of constitutional magnitude but that it merely is evidentiary in nature because it relates solely to the jury's role as a fact finder. Accordingly, we decline to review it because it fails under *Golding*'s second prong.

## III

The defendant's final claim on appeal is that the court improperly denied the state's request to charge on the lesser included offense of assault in the third degree in violation of § 53a-61. The state argues that the defendant was not entitled to a lesser included offense instruction. We agree with the state.

The formulation for determining a defendant's entitlement to a lesser included offense instruction is set forth in *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980). The four part test enunciated in *Whistnant* provides that "[a] defendant is entitled to an instruction on a lesser offense if, and only if, the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant innocent of the greater offense but guilty of the lesser." Id.

The defendant argues that, although it was the state and not she that filed the request to charge on the lesser included offense of assault in the third degree, she has met the *Whistnant* test because under the first prong of the test either party may file the request to charge. On the basis of *State* v. *Jacobs*, 194 Conn. 119, 128 n.4, 479 A.2d 226 (1984), cert. denied, 469 U.S. 1190, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985), we must disagree with the defendant's argument.

In *Jacobs*, our Supreme Court revised the first prong of the *Whistnant* test. See id. The court explained that the defendant in *Jacobs* had "maintain[ed] that the first prong of *Whistnant* was satisfied by the state's written request to charge on the various assault offenses, since *Whistnant* requires that an appropriate instruction be 'requested by either the state or the defendant.' *State* v. *Whistnant*, [supra 179 Conn. 588]." *State* v. *Jacobs*, supra, 194 Conn. 128 n.4. The court went on to explain that although it would permit "the defendant [in that case] to avail himself of the state's request to charge . . . [f]or future cases, [it was] revis[ing] the first prong of *Whistnant* to require that a party claiming error in the failure to charge on a lesser-included offense must himself have filed a written request." Id. The court explained further that "[t]his revision [was] in accordance with the general principle that a party may rely only upon his own actions in preserving a claim of error, and not upon those of his opponent." Id.

In this case, the state, and not the defendant, filed a request to charge on the lesser included offense of assault in the third degree. On the basis of the clear statement of the law enunciated in *Jacobs*, we conclude that the defendant has failed to satisfy the first prong of *Whistnant* and that she was not entitled to a lesser included offense charge.

The judgment is affirmed.

In this opinion the other judges concurred.