STATE OF CONNECTICUT *v*. ANTHONY C. GOODEN
(AC 23647)

Flynn, Bishop and Harper, Js.

Argued February 8—officially released May 31, 2005

*Neal Cone,* senior assistant public defender, for the appellant (defendant).

*James A. Killen,* senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Brian F. Kennedy,* senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Anthony C. Gooden, appeals from the judgment of conviction, following a jury trial, of one count of possession of narcotics in violation of General Statutes § 21a-279 (a), one count of possession of narcotics with the intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and two counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). On appeal, the defendant claims that the court violated his right to due process by improperly instructing the jury (1) on the elements of the crimes of possession of narcotics and possession of narcotics with the intent to sell and (2) on the state's burden of proof. We agree in part with the defendant's first claim, and reverse the judgment in part and order a new trial as to the counts of possession of narcotics in violation of § 21a-279 (a) and possession of narcotics with the intent to sell by a person who is

not drug-dependent in violation of § 21a-278 (b). We affirm the judgment in all other respects.

The jury reasonably could have found the following facts. On September 15, 1999, during an undercover police operation, a confidential informant, Michael Young, arranged to meet the defendant at a Bridgeport restaurant. Young was accompanied by an undercover police officer, James Lofton. Five additional officers were located inside and outside of the restaurant in order to observe the defendant's interactions with Young and Lofton. The defendant, wearing a white Tommy Hilfiger jacket, arrived at the restaurant in a gray Ford Taurus and parked alongside Young's vehicle. Young introduced Lofton as a friend, and the defendant asked Lofton how many he wanted. Lofton said that he wanted two and gave the defendant two previously photocopied $20 bills. The defendant gave Young two plastic bags containing cocaine, which Young passed to Lofton. The defendant, after exiting his vehicle to use a pay telephone, returned and drove away. A few of the officers followed the defendant to 300 French Street in Bridgeport after witnessing the transaction. The officers determined that the vehicle driven by the defendant was registered at that address in the name of Barbara Manning.

Two days later, Young and Lofton again arranged to meet the defendant, this time in Stratford. The defendant drove up in a white Pontiac Grand Am and asked Young and Lofton how many they wanted. Lofton said he wanted two and handed previously photocopied money to Young, who then handed it to the defendant. The defendant gave Young two plastic bags containing cocaine. Four of the officers who had witnessed the previous Bridgeport sale also witnessed the Stratford incident.

On September 23, 1999, members of the Stratford and state police simultaneously executed two search

warrants, one at 11 Justice Street, the home of Kanzada Bishop, the defendant's girlfriend at the time, and one at Manning's 300 French Street address. Upon executing the Justice Street warrant, the police forced entry into the home and found the defendant in a bedroom. The defendant had $614 in his pocket and the keys to the white Grand Am, which was parked in the driveway. Cocaine was found in the overhead compartment of the automobile. Upon executing the warrant at the French Street location, the officers found a suitcase and a storage bin inside of a closet. A Tommy Hilfiger jacket, which matched the description of the jacket worn by the defendant during the first drug transaction, was found in the storage bin in the closet. In its pocket, the officers found a large amount of cocaine. Cocaine was also found packaged in tinfoil on the bathroom floor.

One of the keys from the defendant's key ring, which was seized at the Justice Street location, opened the suitcase from the French Street location. The police found jewelry, papers and approximately $9900 inside of the suitcase. The previously photocopied $20 bills were among the cash found in the suitcase.

During trial, the defendant testified that he was in New York from September 12 through 20, 1999, at the same time that the police say he participated in these drug transactions. He also testified that money seized in the suitcase was money that had been saved for his grandmother's surgery. The testimony of several witnesses confirmed the defendant's New York alibi and his explanation concerning the money. The jury found the defendant guilty on all counts. This appeal followed.

On appeal, the defendant claims that the court violated his right to due process[1] by improperly instructing

---

[1] Although the defendant claims violations of both the federal and state constitutions, he has offered no separate analysis of his state constitutional claim and, therefore, we analyze his claims only under the federal constitution. See *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004).

the jury (1) on the elements of the crimes of possession of narcotics and possession of narcotics with the intent to sell and (2) on the state's burden of proof. The defendant requests review of these unpreserved claims pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2]

"In *Golding*, our Supreme Court held that a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original; internal quotation marks omitted.) *State* v. *Mussington*, 87 Conn. App. 86, 91–92, 864 A.2d 75, cert. denied, 273 Conn. 914, 870 A.2d 1084 (2005). "The first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." *State* v. *George B.*, 258 Conn. 779, 784, 785 A.2d 573 (2001).

We conclude that the first two prongs of *Golding* are satisfied in this case, that is, the record is adequate for review and the claims are of constitutional magnitude. See *State* v. *Leroy*, 232 Conn. 1, 7, 653 A.2d 161 (1995) ("an improper jury instruction as to an essential element

_____

[2] In the alternative, the defendant requests plain error review. See Practice Book § 60-5.

of the crime charged may result in the violation of the defendant's due process right to a fair trial, and thus require the reversal of a conviction based upon that instruction"). Accordingly, we conclude that the defendant's claims are reviewable.[3]

I

The first part of the defendant's due process claim concerns the court's instructions to the jury on the elements of the crimes of possession of narcotics and possession of narcotics with the intent to sell. The possession of narcotics charge stemmed from the police discovery of cocaine in the overhead compartment of Manning's automobile while it was parked at Bishop's home on Justice Street. The charge of possession of narcotics with intent to sell stemmed from the cocaine that was found in the pocket of the Tommy Hilfiger jacket, which was discovered in a clothing storage bin in the closet at Manning's French Street apartment.

"An accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt. . . . This court has consistently held that a claim that the judge improperly instructed the jury on an element of an offense is appealable even if not raised at trial. . . .

"For challenges to jury instructions, we employ the following standard of review. [A] charge to the jury is to be considered in its entirety, read as a whole, and

---

[3] The state in footnote four of its brief claims that it unsuccessfully sought to transfer the present case to our Supreme Court in order to argue that *State* v. *Golding*, supra, 213 Conn. 233, should be reconsidered or overruled. It further states that "apart from putting the defendant on second notice that this is an issue which the state will seek to pursue in our Supreme Court, if necessary, the state will not waste [the Appellate] Court's time contesting the validity of precedent which [the Appellate Court] is powerless to overrule."

judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . We do not critically dissect the charge in order to discover possible inaccurate statements. . . . Rather, we see if [the jury instructions] gave the jury a reasonably clear comprehension of the issues presented for their determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues. . . . [I]n our task of reviewing jury instructions, we view the instructions as part of the whole trial. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. Even if instructions are found to be improper, we must further determine whether they have been prejudicial to the claiming party by adversely affecting the trial's outcome." (Citation omitted; internal quotation marks omitted.) *State* v. *Charles*, 78 Conn. App. 125, 128–29, 826 A.2d 1172, cert. denied, 266 Conn. 908, 832 A.2d 73 (2003).

"[A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence,* such that the jury verdict would have been the same absent the error . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000), quoting *Neder* v. *United States*, 527 U.S. 1, 17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

A

Concerning the jury charge on the crime of possession of narcotics, the defendant, relying on *State* v.

*Parent*, 8 Conn. App. 469, 473, 513 A.2d 725 (1986), argues that his conviction on that charge must be reversed because the court failed to instruct the jury that the state was required to prove, *"not only* that the defendant exercised dominion and control over the [narcotic] substance, [*but that he*] *had knowledge of its presence*, and had knowledge of its narcotic character." (Emphasis added; internal quotation marks omitted.) The state argues that the defendant cannot prevail because "it was clear to the jury that the state had to prove that the defendant intentionally possessed or controlled (which necessarily means knowingly possessed or controlled) the narcotics."[4] Additionally, the state argues in its brief that "the jury was twice instructed on this count that the state had to prove beyond a reasonable doubt that the defendant 'possessed or had under his control *the narcotic substance* found at Justice Street.' " (Emphasis in original.) We agree with the defendant.

On the charge of possession of narcotics, the court instructed the jury in relevant part: "Finally the state has alleged [that the defendant] committed a crime in violation of § 21a-279 (a). This section, in pertinent part, provides [that] any person who possesses or has under his control any quantity of any narcotic substance has committed a crime. If the state has not satisfied you . . . beyond a reasonable doubt that [the defendant]

---

[4] In reference to the state's argument that intentional conduct necessarily is knowing conduct, we point out that our penal code makes a distinction between the two: "An 'intent' element is not synonymous with a 'knowledge' element, each of which is specifically defined in the penal code." *State* v. *Denby*, 235 Conn. 477, 482, 668 A.2d 682 (1995). "General Statutes § 53a-3 (11) provides: 'A person acts "intentionally" with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct.' General Statutes § 53a-3 (12) provides: 'A person acts "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists.' " *State* v. *Denby*, supra, 482 n.6.

possessed or had under his control the narcotic sub-
stance found at Justice Street on September 23, 1999,
you will find him not guilty on that charge. Correspond-
ingly, if the state has proven beyond a reasonable doubt
that there was a narcotic substance present at Justice
Street and that the substance was possessed or under
the control of [the defendant], you will find him guilty."

"Our evaluation of instructional error is a test of
'substance rather than form.' . . . A court is not obli-
gated to read the exact statutory language of a material
definition. . . . In fact, if the statutory language would
confuse the jury, reading it verbatim as part of the
instructions is ill advised. . . . The court must, how-
ever, charge on the substance of the controlling law in
a way that the jury can understand." (Citations omitted.)
*State* v. *Marrero*, 66 Conn. App. 709, 721, 785 A.2d 1198
(2001). It is the function of the court to state the rules
of law and to explain the law to be applied to the facts
of the case. See *State* v. *Scott*, 256 Conn. 517, 527, 779
A.2d 702 (2001). "[T]he trial court is constitutionally
required to instruct the jury properly on every essential
element of the crime charged. . . . A trial court's fail-
ure to instruct the jury on an element of a crime deprives
a defendant of his or her right to have the jury told
what crimes he is actually being tried for and what
the essential elements of those crimes are." (Citation
omitted; internal quotation marks omitted.) *State* v.
*Latorre*, 51 Conn. App. 541, 548, 723 A.2d 1166 (1999).

Pursuant to our rules of law, § 21a-279 (a)[5] requires
that "the state . . . establish beyond a reasonable

---

[5] General Statutes § 21a-279 (a) provides: "Any person who possesses or
has under his control any quantity of any narcotic substance, except as
authorized in this chapter, for a first offense, may be imprisoned not more
than seven years or be fined not more than fifty thousand dollars, or be
both fined and imprisoned; and for a second offense, may be imprisoned
not more than fifteen years or be fined not more than one hundred thousand
dollars, or be both fined and imprisoned; and for any subsequent offense,
may be imprisoned not more than twenty-five years or be fined not more
than two hundred fifty thousand dollars, or be both fined and imprisoned."

doubt that the accused *knew* of the character of the drug and its presence and exercised dominion and control over it. . . . Where . . . the contraband is not found on the defendant's person, the state must proceed on the alternate theory of constructive possession, that is, possession without direct physical contact. . . . Where the defendant is not in exclusive possession of the [place] where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Emphasis added; internal quotation marks omitted.) *State* v. *Sanchez*, 75 Conn. App. 223, 242, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003). Further, to convict the defendant of this crime, the state had to prove that the defendant, and not some other person, possessed a substance that was of a narcotic character with *knowledge* both of its narcotic character and the fact that he possessed it. See *State* v. *Scales*, 82 Conn. App. 126, 132, 842 A.2d 1158, cert. denied, 269 Conn. 902, 851 A.2d 305 (2004); see *State* v. *Hernandez*, 254 Conn. 659, 669, 759 A.2d 79 (2000) ("To prove either actual or constructive possession of a narcotic substance, the state must establish beyond a reasonable doubt that the accused knew of the character of the drug and its presence, and exercised dominion and control over it. . . . Thus, the defendant's defense—that he had no knowledge, dominion or control over the narcotics—would be a complete defense to the charged offenses." [Citations omitted; internal quotation marks omitted.]).

In this case, although the court read § 21a-279 (a) to the jury, we observe that nowhere did the court instruct that the defendant had to have had knowledge of the narcotic character of the substance in the automobile and that he had to have had knowledge of the fact that he possessed such a narcotic substance. See General

Statutes § 21a-279 (a); see also *State* v. *Criscuolo*, 159 Conn. 175, 177–78, 268 A.2d 374 (1970) (holding instruction improper where court read entire statute to jury but failed to define key words). On the basis of our review of the record and relevant case law, we conclude that it is reasonably possible that the jury was misled by the court's instruction and, therefore, the defendant has satisfied the third prong of *Golding.* Cf. *State* v. *Tate*, 59 Conn. App. 282, 286, 755 A.2d 984, cert. denied, 254 Conn. 935, 761 A.2d 757 (2000).

"[A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence,* such that the jury verdict would have been the same absent the error. . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Montgomery,* supra, 254 Conn. 738, quoting *Neder* v. *United States,* supra, 527 U.S. 17. On the basis of our review of the record, we conclude that the court's omission of this instruction was harmful to the defendant, as the evidence of his knowledge of the presence of the cocaine was not overwhelming, and it was contested. During the trial, there was testimony that the automobile that contained the cocaine was rented or leased to Manning, not to the defendant, that Manning had access to the automobile and that the defendant had dropped Manning off at work and borrowed the automobile so that he could go to Bishop's house. The defendant testified and specifically denied any knowledge of the cocaine that was found in the automobile, but he admitted that a roach from a marijuana cigarette, which also was found, belonged to him.

Accordingly, after reviewing the record, we conclude that the omitted element of knowledge was contested and not necessarily supported by overwhelming evidence; absent the error, the jury verdict may not have

been the same. See *State* v. *Montgomery*, supra, 254 Conn. 738. The defendant has satisfied the fourth prong of *Golding*, which is that the error was not harmless beyond a reasonable doubt, and may have resulted in the defendant's conviction.

B

Concerning the jury charge on the crime of possession of narcotics with the intent to sell by a person who is not drup-dependent, stemming from the search of Manning's French Street apartment, the defendant argues that the court "[i]n its entire instructions to the jury . . . never even mentioned an offense called 'possession of narcotics (or drugs or cocaine) with the intent to sell.' Meanwhile, the trial court stated in effect that the defendant would have violated § 21a-278 (b) if he had 'the possession of the narcotics at French Street' . . . ." The defendant argues that the jury easily could have been misled into thinking that the state needed to prove only that he had the intent to possess and not to sell in order to find him guilty of this crime. Although we do not agree with the defendant's claim, we nevertheless reverse this conviction for the same reason that we reverse the conviction on the charge of possession of narcotics.

On the charge of possession with intent to sell by a person who is not drug-dependent, the court charged the jury in relevant part: "Let me tell you the law as it applies to the state's burden to prove each of the four counts pending before you. Remember, each count stands on its own, and each count must be separately proven and separately decided by you. Intentional conduct—intentional conduct is asserted in the charges pending. [The defendant] is currently charged with three counts in violation of § 21a-278 (b). That section provides, and this is a quote, any person who distributes, sells or transports with the intent to sell to another

person any narcotic substance and who is not at the time of such action a [drug] dependent person, commits a crime. . . . The language says, transports with intent to sell. In order to understand the concept of intent, it is purposeful conduct rather than conduct that is accidental or inadvertent. Intent is a mental process. . . .

"[The defendant], as I said, is charged with three counts of [violating §] 21a-278 (b). They are as follows, count one is the alleged sale of September 15, 1999, count two is the alleged sale of September 17, 1999, and count three is the possession of the narcotics at French Street." The court then went on to charge on the violation of § 21a-279 (a), as stated in part I A.

"[T]he failure [of the court] to instruct a jury on an essential element of a crime charged is error because it deprives the defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Internal quotation marks omitted.) *State* v. *Flowers*, 69 Conn. App. 57, 68–69, 797 A.2d 1122, cert. denied, 260 Conn. 929, 798 A.2d 972 (2002). "To prove its case [of a violation of § 21a-278 (b)], the state must prove beyond a reasonable doubt that (1) the defendant possessed a substance, (2) the substance was a narcotic and (3) the defendant intended to sell it." *State* v. *Crnkovic*, 68 Conn. App. 757, 763, 793 A.2d 1139, cert. denied, 260 Conn. 925, 797 A.2d 521 (2002). Additionally, similar to its lesser included offense of possession of narcotics, "the crime of possession of a narcotic substance with the intent to sell . . . includes the element of knowledge." *State* v. *Mahon*, 53 Conn. App. 231, 235, 729 A.2d 242 (1999).

Reviewing the court's charge on the offense of possession of narcotics with intent to sell by a person who is not drug-dependent, we observe, as we did in part I

A relating to the charge of possession of narcotics, that the court did not instruct on the essential element of knowledge. After reviewing the record, we conclude that it is reasonably possible that the jury was misled by the court's instruction. The defendant was not present at Manning's French Street home when the cocaine was found in the pocket of a Tommy Hilfiger jacket in a storage bin inside of a closet. The defendant testified that the jacket did not belong to him. Bishop also testified that she never had seen the defendant with that jacket. The defendant did not live with Manning, but at least one other person lived with her. Additionally, the defendant and several other witnesses testified that the money found in the defendant's suitcase had been raised by the defendant's family so that the defendant could take it to Jamaica to pay for his grandmother's surgery, and the defendant had an airline ticket to Jamaica in the suitcase. Accordingly, we conclude that the evidence as to the omitted element of knowledge was not overwhelming and that it was contested. Therefore, the error was not harmless beyond a reasonable doubt and may have resulted in the defendant's conviction.

## II

The defendant's next claim of a due process violation concerns the court's instructions as to the state's burden of proof. Specifically, the defendant claims that "the instructions as a whole resulted in . . . 'a reasonable likelihood' that the jury found him guilty using a standard that was less than that required by the state and federal constitutions . . . ."

In its charge to the jury, the court instructed that the state bore the burden of proving every element necessary to constitute each crime charged. The court then instructed the jury with regard to reasonable

doubt. The defendant challenges several aspects of the reasonable doubt instructions.[6]

"It is fundamental that proof of guilt in a criminal case must be beyond a reasonable doubt. . . . The [reasonable doubt concept] provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law. . . . At the same time, by impressing upon the [fact finder] the need to reach a subjective state of near certitude of the guilt of the accused, the [reasonable doubt] standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. . . . [Consequently] [t]he defendants in

---

[6] The court's instructions on reasonable doubt are as follows. We have added emphasis to those particular phrases that the defendant claims were misleading. The court instructed: "What do I mean when I say beyond a reasonable doubt? Jurors often struggle with this one. The phrase reasonable doubt has no technical or usual meaning. You can arrive at the real meaning of it by emphasizing the word reasonable. A reasonable doubt is a doubt for which a valid reason can be assigned. It is a doubt which is something more than a guess or a surmise. It's not a conjecture or fanciful doubt. A reasonable doubt is not one raised simply for the purpose of raising doubts. A reasonable doubt is a doubt based on reason and not on the mere possibility of evidence. It is a doubt for which you, in your own mind, can conscientiously give a reason. A reasonable doubt is *a real doubt, an honest doubt,* a doubt which has its foundation in the evidence or lack of evidence. It is— this is probably the best definition in short term—it is the kind of a doubt which in serious affairs of your everyday life you would pay heed to and attention to in making your own decisions. It is a doubt which would lead you to concern about your *important daily decision-making* on serious issues.

"Now, of course, absolute certainty in the affairs of life is almost never attainable. The law does not require absolute certainty on your part before you return a verdict of guilty. The state does not have to prove guilt *beyond all doubt* or to a mathematical or *absolute certainty.* What the law does require, however, is that the—after hearing all the evidence, if there is something in the evidence or lack of evidence which leaves in your mind, as reasonable men and women, a reasonable doubt about the guilt of the accused, then *the accused must be given the benefit of the doubt* and be acquitted. If there is not reasonable doubt, the accused must be found guilty. This is true on each and every one of the now four counts." (Emphasis added.)

a criminal case are entitled to a clear and unequivocal charge by the court that the guilt of the defendants must be proved beyond a reasonable doubt. . . .

"In determining whether a trial court's charge satisfies constitutional requirements, however, individual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury." (Internal quotation marks omitted.) *State* v. *Jones*, 82 Conn. App. 81, 85–86, 841 A.2d 1224, cert. denied, 269 Conn. 912, 852 A.2d 741 (2004), quoting *State* v. *Reynolds*, 264 Conn. 1, 105–106, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

The defendant picks four phrases from the court's instructions and claims they were "misleading" to the jury. First, the defendant challenges the court's instructions that reasonable doubt is "a real doubt, an honest doubt . . . ." Repeatedly, both this court and our Supreme Court have upheld the use of this phrase in a jury instruction. See, e.g., *State* v. *Reynolds*, supra, 264 Conn. 106; *State* v. *Whipper*, 258 Conn. 229, 293–98, 780 A.2d 53 (2001), overruled in part on other grounds, *State* v. *Cruz*, 269 Conn. 97, 106, 848 A.2d 445 (2004); *State* v. *Lemoine*, 256 Conn. 193, 202, 770 A.2d 491 (2001); *State* v. *Velasco*, 253 Conn. 210, 249, 751 A.2d 800 (2000); *State* v. *Jones*, supra, 82 Conn. App. 90–91.

Second, the defendant challenges the court's instruction that the state was not required to prove the defendant's guilt with "absolute certainty" or "beyond all doubt," arguing that it overly favored the prosecution. We do not agree. Our Supreme Court often has upheld nearly identical language. See, e.g., *State* v. *Morant*, 242 Conn. 666, 688, 701 A.2d 1 (1997) (not required to prove guilt " 'beyond all possible doubt' "); *State* v. *Lemoine*, supra, 256 Conn. 202 (" 'state does not have to prove guilt beyond all doubt or to mathematical or absolute certainty' "); *State* v. *Ryerson*, 201 Conn. 333, 343 n.2, 514 A.2d 337 (1986) (" 'law does not require absolute certainty' ").

Third, the defendant challenges the instruction that "the accused must be given the benefit of the doubt . . . ." The defendant posits that the instruction "is commonly understood to mean 'to make a judgment in someone's favor when the evidence is neither for nor against them.' " Precedent dictates that this language is not misleading or otherwise improper. See, e.g., *State* v. *Lemoine*, supra, 256 Conn. 204–205; *State* v. *Jones*, supra, 82 Conn. App. 91; *State* v. *Vicente*, 62 Conn. App. 625, 631–32, 772 A.2d 643 (2001).

The fourth and final challenge to the court's instruction involves the court's explanation that a reasonable doubt is an "important daily decision-making" type of doubt. The defendant admits that our precedent clearly holds that such examples of reasonable doubt are acceptable but, nevertheless, argues that this language was improper. We simply do not agree. Both this court and our Supreme Court have upheld nearly identical language on many occasions. See, e.g., *State* v. *Reynolds*, supra, 264 Conn. 104 (charge that reasonable doubt is " 'the kind of doubt which in the serious affairs which concern you in everyday life you would pay heed to and attention to' " not improper); *State* v. *Colon*, 28 Conn. App. 231, 240–41, 611 A.2d 902 (concept of

"reasonable doubt as one which a person 'would pay some heed to' in his or her daily affairs" not improper), cert. denied, 223 Conn. 922, 614 A.2d 827 (1992); *State* v. *Ferguson*, 260 Conn. 339, 369, 796 A.2d 1118 (2002) (same); *State* v. *Diorio*, 12 Conn. App. 74, 88, 529 A.2d 1320 ("concept of a reasonable doubt as affecting one's daily activities" not improper), cert. denied, 205 Conn. 813, 532 A.2d 587 (1987), cert. denied, 484 U.S. 1065, 108 S. Ct. 1025, 98 L. Ed. 2d 990 (1988).

After reviewing the court's instructions as a whole on the concept of reasonable doubt, we conclude that it is unlikely that they could have misled the jury. The defendant has asked this court to dissect the court's instruction and to review individual words and phrases in artificial isolation, while urging us to ignore or to overrule clear precedent. This we cannot do. After reviewing the court's charge as a whole, we conclude that the defendant was not deprived of his constitutional right to a fair trial. The defendant's claim, therefore, fails under *Golding*'s third prong.

The judgment is reversed only as to the conviction of possession of narcotics in violation of § 21a-279 (a) and possession of narcotics with the intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b), and the case is remanded for a new trial on those charges. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.