STATE OF CONNECTICUT *v.* JOSEPH MARSHALL
(AC 28068)

Flynn, C. J., and McLachlan and Pellegrino, Js.

Argued January 22—officially released May 5, 2009

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael A. DeJoseph*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Joseph Marshall, appeals from the judgment of conviction, rendered after a jury trial, of possession of one-half gram or more of cocaine in freebase form with intent to sell or dispense by a person who is not drug-dependent in violation of General Statutes § 21a-278 (a) and possession of narcotics with intent to sell or dispense within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that the court improperly (1) admitted evidence of his prior uncharged misconduct, (2) permitted the state to elicit evidence regarding the possession by the police of a search warrant for the defendant's person and (3) denied defense counsel's motion to withdraw. We affirm the judgment of the trial court. We conclude that evidence of the prior controlled purchase of narcotics from the defendant in the same car became relevant when he introduced evidence that he did not own the car in question. We further conclude that evidence of the fact that the police possessed a warrant to search the defendant's person was relevant to explain the context of why the police were at the scene, and the court's limiting instruction minimized the risk of undue prejudice to the defendant. Finally, the court did not abuse its discretion in denying defense counsel's motion to withdraw, occasioned by the defendant's grievance against the attorney and made on the brink of the defendant's first trial, which ended in a mistrial. Furthermore, the defendant can show no harm because almost two

months elapsed between his first and second trials, but the defendant did not move to obtain new counsel.

The record reveals the following facts, which the jury reasonably could have found. On April 7, 2004, Norwalk police officers sought to execute a search warrant that they had obtained for the defendant's person. The officers employed a confidential informant with whom they were working to contact the defendant by telephone and to arrange for a purchase of narcotics. The informant set up the purchase to occur at the West Cedar Grocery Store, located at 155 West Cedar Street, which is within 1500 feet of the Colonial Village public housing project. When the call concluded, Officer Terrence Blake, who was with the informant, contacted Officer Salvatore Calise and Detective Mark Lepore, who were surveilling a house on North Taylor Street where they believed the defendant to be, to inform them of the arranged purchase. Shortly thereafter, Calise and Lepore observed the defendant and Samuel Branch leave the house in a black Saturn, with the defendant driving and Branch in the passenger seat. The officers followed the vehicle until it arrived at the West Cedar Grocery Store.

When the defendant parked his vehicle, the officers immediately drove in behind him, blocking his path. Calise observed the defendant "[dip] down to the right into the center console" of the car. Calise then removed the defendant from the vehicle and performed a pat-down search, which revealed no weapons. Blake removed Branch and similarly patted him down, again finding no weapons. Officer Mark Edwards, having been informed by Calise of the defendant's movements within the car, noticed that the car's change holder, which was located in the car's center console, was not flush with the console's surface. Removing the change holder, Edwards found a plastic bag containing 107

smaller plastic bags, each holding an amount of cocaine in freebase form.

After being provided *Miranda*[1] warnings by Sergeant Ronald Pine, the defendant admitted ownership of the narcotics and further stated that Branch had had no knowledge of them. In addition to Pine, to whom the defendant made this admission, Blake and Lepore also heard the defendant state that the narcotics were his.

The defendant was arrested and later charged with possession of one-half gram or more of cocaine in freebase form with intent to sell or dispense by a person who is not drug-dependent and possession of narcotics with intent to sell or dispense within 1500 feet of a public housing project. A jury trial was commenced in November, 2005, before the court, *Tyma, J.* The trial resulted in a hung jury and a mistrial. The defendant was retried to a jury on the same charges before the court, *Dooley, J.*, in January, 2006. The jury returned a guilty verdict on both charges, and the court thereafter sentenced the defendant to a total effective term of ten years incarceration, to be followed by six years of special parole. This appeal followed. Additional facts will be supplied where necessary.

## I

The defendant first claims that Judge Dooley improperly allowed the state to present evidence of the defedant's prior uncharged misconduct. Specifically, the defendant argues that the prejudicial impact of the evidence regarding a controlled purchase of narcotics from him by police that occurred prior to April 7, 2004, outweighed its probative value and should have been excluded.

---

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The following additional facts relate to the defendant's claim. Prior to the start of evidence in the first trial, the state filed a notice of its intention to offer evidence of uncharged misconduct of the defendant. The state sought to offer evidence that the defendant sold cocaine to a confidential informant during controlled purchases on three separate occasions in March, 2004, arguing that such evidence was admissible to establish the intent, common plan or scheme, system of criminal activity or an element of the crime charged pursuant to § 4-5 (b) of the Connecticut Code of Evidence.[2] The defendant objected, arguing that the danger of unfair prejudice outweighed the probative value of the evidence. Judge Tyma agreed with the defendant and sustained his objection, noting in particular the likelihood of prejudice due to the similarity of facts between the offered prior misconduct evidence and the conduct charged in the information.

At the start of the defendant's second trial, Judge Dooley indicated that she would not revisit Judge Tyma's previous evidentiary rulings, including that concerning the admissibility of the uncharged misconduct evidence. On direct examination by the state, Blake testified that the vehicle driven by the defendant on April 7, 2004, was a black Saturn. The state then elicited the following testimony from Blake concerning the defendant's statements while in custody:

---

[2] Section 4-5 of the Connecticut Code of Evidence provides in relevant part: "(a) Evidence of other crimes, wrongs or acts inadmissible to prove character. Evidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person.

"(b) When evidence of other crimes, wrongs or acts is admissible. Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony. . . ."

"[The Prosecutor]: Did you overhear any conversations between Sergeant Pine and the defendant at the scene at 155 West Cedar Street?

"[The Witness]: I did.

"[The Prosecutor]: Did you hear the defendant say anything to Sergeant Pine?

"[The Witness]: I heard the defendant state that the narcotics that we located were his.

"[The Prosecutor]: And did he state what Mr. Branch was doing in his car?

"[The Witness]: He was just giving Mr. Branch a ride and that Mr. Branch had no knowledge of the narcotics in the car."

A portion of defense counsel's subsequent cross-examination of Blake focused on the black Saturn referenced by Blake earlier in his testimony:

"[Defense Counsel]: This vehicle, do you know who the owner of that vehicle was, the black Saturn?

"[The Witness]: Registered to, yes.

"[Defense Counsel]: And who was that?

"[The Witness]: A Diane Jameson.

"[Defense Counsel]: And it was—the vehicle was not owned by [the defendant], was it?

"[The Witness]: It was not registered in his name, no.

"[Defense Counsel]: Well, generally isn't a vehicle that's registered to someone presumed to be owned by that person?

"[The Witness]: Yes.

"[Defense Counsel]: All right. And this black Saturn, was that vehicle seized by you or anyone else in the Norwalk police department on April 7, 2004?

"[The Witness]: No.

"[Defense Counsel]: And if you know, what did happen with the vehicle that day?

"[The Witness]: The vehicle was turned over to a female that claimed to be [the defendant's] girlfriend.

"[Defense Counsel]: Do you know who that female was?

"[The Witness]: I believe her name is Rose Cruz.

"[Defense Counsel]: Okay. Now, who turned that vehicle over to Ms. Cruz, if you know?

"[The Witness]: I believe I gave the keys back to her as per [the defendant's] request.

"[Defense Counsel]: All right. Where was Ms. Jameson, this Diane Jameson? Was she there?

"[The Witness]: No, not that I recollect."

When defense counsel concluded his cross-examination of Blake, the prosecutor, outside the presence of the jury, moved to admit evidence that the defendant had used the black Saturn in question on March 20, 2004, during one of the previous controlled purchases. The prosecutor argued that defense counsel had opened the door to such previously excluded evidence by eliciting testimony concerning ownership of the black Saturn, specifically, the fact that the defendant was not the owner. The defendant's line of questioning and Blake's responses thereto, the prosecutor contended, could lead the jury to infer that because the defendant did not own the car, he had no knowledge of the narcotics found in the vehicle's console. The defendant disagreed that the door had been opened, noting that there was no dispute over the fact that the defendant drove the black Saturn on April 7, 2004, or with the fact that the vehicle belonged to someone other than the defendant.

The court ruled that it would permit testimony concerning the March 20, 2004 controlled purchase but would not allow testimony about the two other purchases, during which the defendant had used different vehicles. On redirect examination, Blake testified about the details of the March 20, 2004 controlled purchase of narcotics. Pine also testified as to the previous transaction and the defendant's use of a black Saturn. In its charge to the jury, the court instructed that the evidence of the March 20, 2004 purchase was to be considered only as evidence of the defendant's intent to sell or dispense narcotics and his knowledge of such narcotics on April 7, 2004.[3]

We begin our analysis of the defendant's claims with the well known standard of review governing evidentiary matters. "Unless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a

---

[3] The relevant portion of the court's instruction was as follows: "The state has offered evidence of prior acts by the defendant which allegedly occurred on March 20, 2004. This evidence offered by the state of prior acts of misconduct of the defendant is not being admitted to prove the bad character of the defendant or the defendant's tendency to commit criminal acts. This evidence is being admitted solely to show or establish the existence of the defendant's intent to sell or dispense, as well as the defendant's knowledge regarding the possession of the alleged narcotics on April 7, 2004, both of which are necessary elements of the crimes charged.

"You may not consider such evidence as establishing a predisposition on the part of the defendant to commit any of the crimes charged or to demonstrate a criminal propensity. You may consider such evidence if you believe it and further find [that] it logically, rationally and conclusively supports the issues for which it is being offered by the state, but only as it may bear here on the issues of intent and knowledge.

"On the other hand, if you do not believe such evidence, or even if you do, if you find that it doesn't logically, rationally and conclusively assist on the issues of either knowledge or intent, you may not consider that testimony for any purpose. In sum, you may consider this evidence only on the issues of knowledge and intent and for no other purpose."

clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Smith,* 275 Conn. 205, 219, 881 A.2d 160 (2005). We also observe that evidence may become relevant when placed against the matrix of other evidence that has been admitted. We further note that motions in limine cannot always anticipate that evidentiary matrix because trials are fluid and do not follow a script.

Prior to his first trial before Judge Tyma, the defendant successfully moved in limine to keep the evidence of three controlled narcotics purchases from being introduced because their probative value was outweighed by their potentially prejudicial effect on the jury. At his second trial before Judge Dooley, the court admitted evidence of only one incident on the theory that the defendant had "opened the door" to this inquiry and offer of evidence. On appeal, the defendant claims that the court improperly admitted this evidence on the ground that the door to it had been opened in cross-examination and that in any event, its prejudicial effect outweighed any probative value and, therefore, militated against its admission.

Cross-examination of Blake by defense counsel had raised questions about the ownership of the black Saturn in which the defendant was said to have possessed narcotics and had brought out that the vehicle was not owned by the defendant. The court ruled that by raising questions about the ownership of the vehicle in which the narcotics were found, in a case in which the state would be required to prove dominion and control over the narcotics beyond a reasonable doubt, evidence that the defendant had used the same black

Saturn to sell drugs to an undercover agent on a prior occasion was probative on an issue raised by the cross-examination. The court excluded evidence of two prior sales to agents in which the defendant had used cars different from the one used in the crime charged.

The crime of possession of narcotics with intent to sell requires that the state establish beyond a reasonable doubt that the defendant possessed a substance that was of a narcotic character with knowledge both of its narcotic character and the fact that he possessed it. See *State* v. *Gooden*, 89 Conn. App. 307, 315, 873 A.2d 243, cert. denied, 275 Conn. 918, 919, 883 A.2d 1249 (2005). Had the defendant owned the vehicle, it would tend to prove that he exercised dominion or control over the narcotics within it. The defendant's cross-examination, bringing out the fact that he did not own the vehicle in which the narcotics were found, raised doubt about whether he possessed the narcotics because of the lack of dominion or control over the vehicle. However, evidence that he previously had sold narcotics from the same vehicle to an undercover agent was relevant to dispel that doubt about a necessary element of the crime and to show knowledge on the part of the defendant and a system of criminal activity. See Conn. Code Evid. § 4-5 (b). Like Judge Tyma, Judge Dooley recognized that the evidence of past narcotics sales had a potentially prejudicial aspect. She excluded evidence of two of these sales that were conducted from different cars. She admitted evidence of the prior sale from the black Saturn only after the defendant offered evidence that it was owned by another person.

Finally, when a ruling on evidence is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. *State* v. *Sawyer*, 279 Conn. 331, 352, 904 A.2d 101 (2006), overruled in part on other grounds by *State* v. *DeJesus*, 288 Conn. 418, 455 n.23, 953 A.2d 45 (2008) (en banc). The evidence

in the case also showed that the defendant had admitted in the presence of others that the narcotics were his. Evidence that he previously had dominion and control of narcotics that he sold from the same car was probative. We fail to see how the defendant could demonstrate harm from the admission of that evidence that reasonably affected the verdict in the case when he had admitted the contraband was his, and conclude that this claim has no merit.

## II

We next turn to the defendant's second claim, namely, that the court improperly permitted the state to elicit evidence that the police were in possession of a search and seizure warrant for the person of the defendant at the time they arrested him. As this claim challenges an evidentiary ruling, similar to the defendant's first claim, we review the court's decision under the abuse of discretion standard. See *State* v. *Smith*, supra, 275 Conn. 219.

Prior to the start of evidence in the second trial, the state notified the court of its intention to offer evidence that the police were executing a search warrant on April 7, 2004, when they arrested the defendant. The defendant moved to exclude the evidence, arguing that its potential prejudicial effect on the jury, in that it would lead the jury to speculate that he had done something wrong, outweighed its potential probative value. In opposition to the defendant's motion, the state contended that the existence of the warrant put the police officers' actions on April 7, 2004, into the proper context, explaining why they were at the location where the defendant was arrested and why the defendant was searched.

The court denied the defendant's motion. It noted that testimony regarding the existence of the warrant was proper to place the police conduct into context.

The court also stated its belief that the testimony to be elicited by the state would not include information pertaining to the circumstances under which the search warrant was obtained. Furthermore, the court stated that without evidence of the warrant, the jury could be left to speculate about the police officer's actions. The state elicited testimony from Blake, Calise, Edwards, Lepore and Pine to the effect that on April 7, 2004, the officers were involved in an operation to execute a warrant to search the defendant's person. Following the conclusion of evidence, the court included a limiting instruction in its charge to the jury, instructing that the evidence of the search warrant was relevant only as to the context of the police investigation and that the jury was not to speculate as to the circumstances preceding the execution of the warrant.[4]

We conclude that the court did not abuse its discretion by determining that the evidence regarding the possession of a search warrant by the police prior to April 7, 2004, and the fact that, at the time of the events in question, they were executing that warrant, was not more prejudicial than probative under the circumstances of this case. Admission of this evidence provided the jury the proper context for the actions taken by the police officers. Without such evidence, there would have been a danger that the jury would speculate on the underlying reasons for the officers' actions. Further, the testimony was limited to the bare facts that a warrant existed and that the officers were attempting to execute the warrant when they stopped and searched the defendant.

[4] The court instructed the jury, in relevant part, as follows: "Now, the state has introduced evidence that the police executed a search warrant. The fact that a search warrant was executed was offered to explain the context in which the investigation unfolded. You are not to speculate as to the events or circumstances leading up to the execution of the search warrant, as this is not before you."

Finally, the court provided a limiting instruction, guiding the jury in the proper use of the evidence. In so doing, the court took appropriate action to minimize any potential that the evidence of the search warrant would prejudice the defendant. Without clear evidence to the contrary, we presume that the jury followed the court's instruction. *State* v. *Wallace*, 290 Conn. 261, 276, 962 A.2d 781 (2009). The defendant presents no evidence that the jury failed to follow the court's instructions, and we have found none. We therefore conclude that the court did not abuse its discretion in allowing evidence of the search warrant to be presented to the jury.

## III

The defendant's final claim is that the court improperly denied his trial counsel's motion to withdraw before the first trial commenced. Specifically, the defendant claims that when his trial counsel, attorney William A. Pelletreau, met with him while he was incarcerated prior to trial, he refused to cooperate with Pelletreau and informed him that he had filed a grievance against him and also complained about him to the National Association for the Advancement of Colored People. This prompted Pelletreau to file a motion to withdraw.

Following a hearing during which the court heard from the defendant, Pelletreau and the prosecutor, the court denied the motion to withdraw. The court held that the defendant had failed to show with any specificity any deficiencies on the part of his attorney in terms of trial preparation, strategy or other trial handling, or that he had suffered any prejudice. Citing our Supreme Court's decision in *State* v. *Vega*, 259 Conn. 374, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002), the court concluded that the mere filing of a grievance against trial counsel in and of itself

is insufficient to establish a violation of the sixth amendment right to counsel, that the inquiry had shown no prejudice and that the defendant had not shown that the nature of the representation had been affected. Pelletreau continued to represent the defendant at the first trial. His representation created enough reasonable doubt that the jury could not agree on the defendant's guilt. A mistrial was declared after the jury was unable to agree on a verdict. Ultimately, the defendant was retried before Judge Dooley almost two months later and convicted.

On appeal, we review a court's decision regarding a motion to withdraw as counsel under the abuse of discretion standard. See *State* v. *Fernandez*, 254 Conn. 637, 647, 758 A.2d 842 (2000), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001). We conclude that the defendant has failed to meet his burden to show that the court abused its discretion. First, the defendant was accorded a full hearing on the record before Judge Tyma, who took into account the nature of the defendant's grievance and properly considered that the defendant's dissatisfaction was expressed on the eve of trial, despite the fact that he had been represented by the same attorney for almost one year, permitting an inference that the objections were being interposed for the sake of delay. The defendant's complaints were generalized and lacked the particularity necessary to establish that Pelletreau could not function effectively, which would have justified delaying the trial to permit another attorney to be retained and to prepare the case. The court listened to both the defendant and Pelletreau.

Second, we agree with the state that it is significant that the defendant chose to retain the services of Pelletreau throughout the course of both trials and during the course of almost two months between the declaration of a mistrial after the hung jury in the first trial

and the beginning of evidence in the retrial. We see no prejudice that can be shown by the denial of Pelletreau's motion to withdraw because a new trial was held and the defendant made no change in his privately retained defense counsel, Pelletreau, from the first trial before Judge Tyma, to the second trial before Judge Dooley. In short, the defendant appeals from the judgment of conviction following the second trial, and the record is devoid of anything that would indicate that he sought to obtain new counsel during the hiatus of several weeks between the first and second trial or that his counsel could not function effectively.

The judgment is affirmed.

In this opinion the other judges concurred.